IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| JESSE B. BRIGGS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 25-cv-1774 |
| v. ) | |
| ) | **COMPLAINT** |
| MILWAUKEE COUNTY ) | |
| ) | |
| Defendant. ) | JURY TRIAL DEMAND |

NATURE OF THE ACTION

Plaintiff, JESSE B. BRIGGS ("Mr. Briggs"), brings this action pursuant to the Americans With Disabilities Act, as Amended (ADA/ADAAA) 42 U.S.C. §12101, et seq. to remedy acts of employment discrimination and retaliation perpetrated against him by MILWUAKEE COUNTY. ("MC" or "Defendant")

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343.

2. The Employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Wisconsin.

PARTIES

3. Mr. Briggs is a citizen of the United States and a resident of Wisconsin. At all times relevant to this action, Mr. Briggs was, and is qualified individual with an actual and/or perceived disability as defined by the ADA Amendments Act of 2008 ("ADAAA")

1

and was employed by Defendant until his employment was terminated on or about November 21, 2022.

4. At all relevant times, Defendant MC is a public agency and county in the State of Wisconsin operating the Office of Emergency Management, with the principal offices in Milwaukee, Wisconsin.

5. At all relevant times, Defendant has continuously been a covered employer engaged in an industry affecting commerce under Section 101(5) and 101(7) of the ADA and Section 2000e(b), (g) and (h) of Title VII, and 29 CFR 825.104.

## ADMINISTRATIVE EXHAUSTION

6. Mr. Briggs has complied with all the administrative prerequisites to action under Section 706 of Title VII, the ADA and the ADEA as required.

7. Mr. Briggs filed his charge with the Equal Employment Opportunity Commission ("EEOC") on February 6, 2023 and a Notice of Suit was issued on September 18, 2025 for EEOC charge Number 26G-2023-00631.

## FACTUAL ALLEGATIONS

8. Mr. Briggs was hired as a 911 Dispatcher for Defendant beginning on or about February 7, 2022.

9. On or about April 6, 2022 Mr. Briggs provided medical documentation of his psoriatic arthritis with a request for one to two days off for recovery when flareups happen.

10. MC made no attempt to engage in an interactive process based on Mr. Brigg's April 6, 2022 communication.

11. Instead, when Mr. Briggs had to leave work early due to a flare-up on July 5, 2022, not only was he written up, he was given a double occurrence in violation of MC's own attendance policy, which states that having to leave work early would only count as a single occurrence.

12. On or about August 6, 2022, having received no assistance regarding his disability, Mr. Briggs reached out to MC again to discuss his condition and request an accommodation.

13. On or about August 9, 2022, MC gave Mr. Briggs an accommodation form and told him he has a week to get it filled out.

14. MC reminded him at this time that any use of sick time will count as an attendance occurrence.

15. Mr. Briggs pointed out that he is scheduled to work seventy-two (72) hours within the one-week period that he is supposed to get a doctor to fill out his accommodation request form, meanwhile he will be suffering from flareups.

16. On or about August 20, 2022 Briggs informs his supervisor of a flareup he was suffering from psoriatic arthritis and provides the April 6, 2022 doctor's note.

17. His supervisor stated that he will still receive an attendance occurrence, despite the note.

18. Between approximately August 26, 2022 and September 4, 2022, after having to miss some time due to his disability, his supervisor, Joel Miller not only writes him up for the time he missed, he also suddenly produces another writeup for Mr. Briggs for an event that happened five weeks earlier (July 29, 2022).

19. On or about August 29, 2022 Human Resources (HR) approved the writeups despite its knowledge of his condition and reason for leaving work and delivered them to Mr. Briggs on September 4, 2022.

20. Mr. Briggs received attendance points for his arthritis flare-up in the knee, for August 20, 2022 and two points for August 26, 2022.

21. On or about August 30, 2022 HR claimed that it needed an updated accommodation form from Mr. Briggs because he "*chose not to fill it out,*" despite previous conversations about the difficulty of seeing his doctor while on an overworked schedule.

22. On or about August 31, 2022 Mr. Briggs provided his doctor's signed note that states Mr. Briggs can only work **48 hours in a seven-day period with no shift lasting longer than 12 hours** for a **Ninety-Day** period.

23. On or about September 2, 2022 the 911 Communications Director, Kenyatta Patterson says she can honor the accommodation request from September 19, 2022 to December 19, 2022 (**Ninety Days**).

24. During the week of September 4, 2022, Mr. Briggs worked five days in a row totaling sixty (59.98) hours.

25. On or about September 6, 2022 MC has an internal conversation that they can accommodate Mr. Briggs' request from September 19 to November 29, 2022 (**seventy days**), believing that his doctor felt the accommodation request was only needed for ninety days from the date of his letter, as opposed to a ninety-day period of accommodation.

26. An HR business partner also falsely claims that Mr. Briggs' off days were already being accommodated.

27. On or about September 8, 2022, MC told Mr. Briggs that they were denying his accommodation request but offered to transfer him to a part time position with a maximum of thirty-two (32) hours a week with no health insurance or other benefits.

28. Mr. Briggs responded that an accommodation for a person with a disability that includes losing his health insurance is not a real accommodation at all and that he would be speaking with an "ADA Attorney".

29. On or about September 9, 2022 MC acknowledged there was an ongoing interactive process.

30. MC then told Mr. Briggs that it will accommodate his original request but only for **thirty (30) days**.

31. On or about September 11, 2022, Mr. Briggs called in sick because he was again scheduled for five days that week and his condition was flaring up.

32. On or about September 13, 2022 Mr. Briggs spoke directly with Ms. Patterson due to the lack MC following his doctor's restrictions.

33. Ms. Patterson claimed that having four days on and two days off is equivalent to forty-eight (48) hours in a one-week time span.

34. Mr. Briggs pointed out to her that if he works Sunday through Wednesday, gets two days off, then works Saturday, that's a 60-hour work week.

35. Mr. Briggs would frequently insist that MC was not properly handling his request for an accommodation and that he would be sharing the information with his attorney and that he would be taking the matter to Court.

36. On or about September 16, 2022, a month and a half after mandated overtime, serious flareups and a doctor's note to MC, MC acknowledged the doctor's request for no more than forty-eight (48) hours of work in a seven-day period.

37. MC stated that as of September 18, 2022 "The department has updated the schedule to reflect your requested accommodation. This schedule will be in effect from 9/18-10/22/22" [**one month**].

38. That very first week, Mr. Briggs worked over forty-eight (48) hours.

39. On or about September 26, 2022, disregarding the fact that he is on an approved accommodation limiting his hours, Ms. Patterson tells Mr. Briggs that he can be mandated overtime at a moment's notice.

40. From October 10 to October 19, 2022, Mr. Briggs is scheduled for nine out of ten days.

41. For the week of October 24, 2022, he was scheduled for sixty (60) hours, forcing Mr. Briggs to use a sick day on October 24, to try to keep his hours under forty-eight.

42. Even with the sick day, he still worked just over forty-eight hours (48.48).

5

43. MC's failure to accommodate Mr. Briggs cause his symptoms to worsen, exacerbating his condition.

44. Mr. Briggs, having no other options, went back to HR and Ms. Patterson and said that he was now willing to go to part time and give up his health benefits.

45. MC stated that he could no longer transfer due to the writeups he had received after notifying them of his disability.

46. Many of these writeups were for absences caused by MC's failure to accommodate Mr. Briggs.

47. On or about November 23, 2022, Ms. Patterson files charges for termination due to attendance occurrences with the final straw being October 24, 2022.

48. The charge to terminate also references August 20, 21, 26, 29.

49. Mr. Briggs has suffered damages as a result of the acts and omissions committed by MC.

**Count One**
**Violation of the ADA/ADAAA**
**(Employment Discrimination based on Disability)**

50. Mr. Briggs realleges and incorporates by reference the allegations contained in all preceding and all subsequent paragraphs of the Complaint as though fully set forth herein.

51. Mr. Briggs has a physical impairment that substantially limits one or more of his major life activities such that he is an individual with a disability within the meaning of the ADAAA.

52. Mr. Briggs suffers from Psoriatic Arthritis involving multiple sites on his body.

53. The main symptoms of psoriatic arthritis are joint pain, stiffness and swelling. These symptoms can affect any joint in the body. The symptoms of this condition

can vary from mild to serious. Like psoriasis, psoriatic arthritis often goes through cycles. Sometimes symptoms flare up. Other times, they may ease or go away for a while.

54. In Addition, Defendants regarded Mr. Briggs as an individual with a disability within the meaning of the ADAAA.

55. Defendant failed to accommodate Mr. Briggs, despite acknowledging that it would not create an undue hardship to do so.

56. Defendant engaged in prohibited conduct under the ADA/ADAAA by interfering with, restraining or denying Mr. Briggs's rights provided under the ADA/ADAAA.

57. Defendant discriminated against Mr. Briggs under the ADA/ADAAA by threatening to discipline, or disciplining the use or attempted use of an accommodation pursuant to the ADA/ADAAA.

58. Defendant discriminated against Mr. Briggs under the ADA by requiring him and threatening to require him to work more frequently when they knew that was likely to exacerbate his disability and cause him to miss time at work.

59. Defendant discriminated against Mr. Briggs' rights under the ADA, including but not limited to the right to be to be free from threats and discipline for exercising his rights under the law and to be given the same opportunities, terms and conditions of employment as that of other similarly situated employees who were not disabled.

60. Ultimately, Defendant discriminated against Mr. Briggs under the ADA by actually or constructively terminating his employment.

7

61. Defendant's actions were intentional, with deliberate disregard for the rights and sensibilities of the Mr. Briggs.

62. As a direct and proximate result of Defendant's wrongful acts and omissions, Mr. Briggs sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

## Count Two
## Retaliation for Engaging in Protected Activities
### (ADA/ADAAA)

63. Mr. Briggs realleges and incorporates by reference the allegations contained in all preceding and all subsequent paragraphs of the Complaint as though fully set forth herein.

64. Mr. Briggs made various complaints regarding disparate and direct adverse treatment based on his disability as described herein.

65. As a result of Mr. Briggs's complaints of discrimination, the terms and conditions of Mr. Briggs's employment with MC became less favorable than other similarly situated employees who had not made complaints of discrimination.

66. As a result of the disparate treatment, Mr. Briggs suffered damages, including the opportunity have his schedule be accommodated or be transferred.

67. Ultimately, Defendant terminated (actually or constructively) Mr. Briggs's employment because of his complaints of discrimination.

68. As a direct and proximate result of Defendant's retaliatory acts and omissions, Mr. Briggs sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff JESSE B. BRIGGS, respectfully requests that this Court:

A. Order Defendant MILWAUKEE COUNTY to make whole Mr. Briggs, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or placement in the positions for which he should have been hired or front pay in lieu of reinstatement.

B. Order Defendant MILWAUKEE COUNTY to make whole Mr. Briggs, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to job search expenses, effects on credit history, debt, loss of benefits, increase in insurance costs and other incidental expenses, in amounts to be determined at trial.

C. Order Defendant MILWAUKEE COUNTY to make whole Mr. Briggs by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained above, including, but not limited to emotional pain, suffering, inconvenience, humiliation and mental anguish, in amounts to be determined at trial.

9

D. Award Mr. Briggs his reasonable attorney's fees and costs, including but not limited to expert witness fees as provided for under the ADA/ADAAA.

E. Award Mr. Briggs with interest on any awards at the highest rate allowed by law; and,

F. Grant such further relief as the Court deems necessary and proper.

JURY TRIAL DEMAND

Plaintiff, JESSE B. BRIGGS, requests a jury trial on all matters as to which he is entitled by law.

LAW OFFICE OF ADAM M. KENT

Dated: November 12, 2025

s/Adam M. Kent
Adam M. Kent
Attorney for Plaintiff

7670 N. Port Washington Rd
Suite 105
Milwaukee, WI 53217
(619) 892-8422
Attorney@adamkentlegal.com
WI Bar No.: 1099634